UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TARA M. KINGSBERRY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:05CV978SNL |
| ) | |
| MALLINCKRODT, INC. and ) | |
| KFORCE SOLUTIONS, LLC., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM**

Plaintiff has filed this amended Title VII and Missouri Human Rights Act (MHRA) employment discrimination complaint alleging sexual harassment and unlawful termination of employment in retaliation for complaining of sexual harassment against defendant Mallinckrodt, and unlawful termination and failure to reassign in retaliation for complaining of sexual harassment against defendant KForce Solutions (hereinafter referred to simply as Kforce). This matter is before the Court on defendant Kforce's motion for summary judgment (#43), filed May 15, 2006. Extensive responsive pleadings have been filed and this matter is now ripe for disposition. This cause of action is currently set for jury trial on the Court's trial docket of August 21, 2006.

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really

do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Coop. Inc., 838 F.2d 268, 273 (8th Cir. 1988).

Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S. Ct. 486, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Citrate, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir. 1976). Although summary judgment should seldom be granted in employment discrimination cases, it is proper in those cases wherein the plaintiff fails to establish a factual dispute on an essential element of the case. Snow v. Ridgeview Medical Center, 128 F.3d. 1201, 1205 (8th Cir. 1997), *citing* Bialas v. Greyhound Lines, Inc., 59 F.3d. 759, 762 (8th Cir. 1995). "Although summary judgment is to be used sparingly in employment discrimination cases, it is appropriate where one

party has failed to present evidence sufficient to create a jury question as to an essential element of its claim." Whitley v. Peer Review Sys., Inc., 221 F.3d. 1053, 1055 (8th Cir. 2000)(citations omitted). The Eighth Circuit has "repeatedly cautioned that summary judgment should seldom be granted in the context of employment actions, as such actions are inherently fact based. Summary judgment is not appropriate unless all the evidence points one way and is susceptible to no reasonable inferences sustaining the position of the nonmoving party." Hindman v. Transkrit Corp., 145 F.3d. 986, 990 (8th Cir. 1998)(citations omitted); *see*, Mayer v. Nextel West Corp., 318 F.3d. 803, 806 (8th Cir. 2003) *citing* Keathley v. Ameritech Corp., 187 F.3d. 915, 919 (8th Cir. 1999). However, it is clear that to survive summary judgment, a plaintiff must support his/her allegations with sufficient probative evidence to permit a finding in the plaintiff's favor based upon more than mere speculation, conjecture, or fantasy. Putnam v. Unity Health Systems, Inc., 348 F.3d. 732, 733-34 (8th Cir. 2003) *quoting* Wilson v. Int'l Bus. Mach. Corp., 62 F.3d. 237, 241 (8th Cir. 1995); Girten v. McRentals, Inc., 337 F.3d. 979, 982 (8th Cir. 2003)(plaintiff's theory of age discrimination failed "[b]ecause this theory is supported more by contentions and speculation than evidence, it is insufficient to withstand summary judgment.").

Although the Court is required to view the facts in the light most favorable to the non-moving party, it should not accept "unreasonable inferences or sheer speculation as fact.". Howard v. Columbia Public School District, et. al., 363 F.3d. 797, 800 (8th Cir. 2004). A plaintiff may not "simply point to allegations made in [her] complaint but must identify and provide evidence of `specific facts creating a triable controversy." Howard, at 800 *quoting* Jaurequi v. Carter Manufacturing Co., 173 F.3d. 1076, 1085 (8th Cir. 1999). Furthermore, a plaintiff may not simply provide a massive record expecting the Court to sift through it in an effort to find support for the plaintiff's allegations. Howard, at 800-01 (citations omitted). The Court

3

is only obligated to consider "admissible evidence and disregard portions of various affidavits and depositions that were made without personal knowledge, consist of hearsay, or purport to state legal conclusions in fact.". Howard, at 801 *citing* Shaver v. Independent Stave Co., 350 F.3d. 716, 723 (8th Cir. 2003).

The facts as pertaining to the instant summary judgment motion are largely undisputed.[1] Defendant Kforce is a professional staffing firm that provides temporary and permanent staffing solutions for employers and job seekers in specialty skill areas, including but not limited to, the areas of Finance and Accounting, Technology, Healthcare, Clinical Research and Scientific Services. Defendant's Exhibit A - Deposition of Jessica Duffey, pg. 7.[2]

On or about March 24, 2003 defendant Mallinckrodt became one of Kforce's clients by executing a Client Staffing Agreement. Defendant's Exhibit K. This Client Staffing Agreement provided that each placement by Kforce with Mallinckrodt was terminable by either party. Defendant's Exhibit K, ¶2.

---

[1]Plaintiff has admitted all facts as contained in Kforce's statement of uncontroverted material facts (#45), filed May 15, 2006 except for ¶8 which states "Kforce was contractually obligated to carry out Mallinckrodt's decision to terminate Plaintiff's assignment." and references Exhibit K. Plaintiff states that she can neither admit or deny this fact as she was not a party to the contract. Plaintiff's Response to Defendant Kforce's Statement of Uncontroverted Material Facts (#57), filed June 15, 2006. Finally, the Court has carefully reviewed Plaintiff's Additional Statement of Uncontroverted Material Facts" (#57) and finds that it consists mostly of hearsay, legal conclusions, suppositions, and matters totally unrelated to the allegations of retaliation asserted against defendant Kforce. For example, ¶4 and its subsections are all incidents which plaintiff interprets as being "sexually harassing" such as being asked whether she likes hotdogs is believed by her to be an inquiry as to whether she likes oral sex. Such interpretations and conclusions are not "material facts". Although the Court will not strike this pleading (defendant did not file a motion to strike), the Court will only consider those statements it deems to be factual in nature and supported by a reference to the evidentiary record.

[2]When the Court refers to "defendant" in this memorandum, the reference is to defendant Kforce unless otherwise noted.

On February 13, 2004 defendant and plaintiff entered into a Professional Service Agreement in which plaintiff agreed that she would be performing scientific services for Kforce's client Mallinckrodt "at the time and place designated by the Client[3], as directed by the Client, and for the length of time designated by the Client." Defendant's Exhibit F. Prior to starting her assignment with Mallinckrodt, defendant's Staff Recruiter, Jessica Duffey, provided plaintiff with an orientation, including but not limited to, a review of defendant's employment policies and procedures which included defendant's sexual harassment policy. Defendant's Exhibit D - Plaintiff's Deposition, pgs. 120, 168-69, 171; Duffey Depo., pgs. 22-24; Defendant's Exhibit E.

Plaintiff was placed at Mallinckrodt as an Analytical Chemist under the supervision of Michael Washington. Defendant's Exhibit B. Plaintiff's primary responsibility was to provide chemical analysis of Mallinckrodt's products, as well as some method development. Plaintiff's Depo., pgs. 155-56; Defendant's Exhibit C - Deposition of Michael Washington, pgs. 8, 10. This was to be accomplished through laboratory experiments assigned to her by Washington. Plaintiff's Depo., pgs. 201-02. Mallinckrodt required all steps of every laboratory experiment to be documented in a lab notebook kept by the chemist performing the experiment; and, that all entries in the lab notebook be made within two (2) days of the completion of the experiment. Plaintiff's Depo., pgs. 201, 207, 218; Washington Depo., pg. 48. Finally, Mallinckrodt required all lab notebook entries to be "peer reviewed" within two (2) weeks of their completion. Plaintiff's Depo., pgs. 207, 218; Washington Depo., pg. 48. The peer review process provided a "double-check" of a chemist's work; otherwise, Mallinckrodt could not use the data. Plaintiff's Depo., pgs. 208, 321-22; Washington Depo., pgs. 71-72. Plaintiff was given a lab notebook in which to document her work and was aware of Mallinckrodt's protocol regarding it.

---

[3]The "Client" referenced in the agreement is Mallinckrodt.

Sometime in mid to late April 2004, Washington met with defendant's Account Manager Rebecca Bryson-Ritchey[4] to discuss Washington's job performance evaluation of plaintiff as part of a "90 day review". Washington Depo., pg. 21; Defendant's Exhibit G - Deposition of Rebecca Bryson-Ritchey, pg. 27; Duffey Depo., pgs. 34, 36-7. Washington reported that plaintiff's overall work performance was "average" but that plaintiff "liked to debate" and needed to improve on her lab notebook. Defendant's Exhibit H; Bryson-Ritchey Depo., pgs. 19, 21-22; Washington Depo., pgs. 14-15. The evaluation completed by Bryson-Ritchey, based upon Washington's report to her, states several times Washington's dissatisfaction with plaintiff's notebook. Defendant's Exhibit H. Towards the end of April 2004, Washington sat down with plaintiff for an informal review and told her that her work was average but that she was deficient in keeping her lab notebook up to date. Plaintiff's Depo., pgs. 326-327. Meanwhile, after Bryson-Ritchey completed plaintiff's evaluation, she gave it to Duffey and relayed to her that Duffey needed to talk to plaintiff about plaintiff's argumentive attitude and her failure to complete her lab notebook. Duffey Depo., pgs. 41, 43. Duffey contacted the plaintiff and told her that although her work performance was average, she needed to improve upon her argumentive attitude and her lab notebook. Duffey Depo., pgs. 34, 54, 56-7. Plaintiff was not receptive to the constructive criticism; however, she did not make any allegations regarding sexual harassment by Washington to Duffey. Duffey Depo., pg. 57.

On May 3, 2004 plaintiff contacted Duffey and for the first time expressed her concerns regarding Washington's treatment of her. Plaintiff alleges that she related to Duffey "everything

---

[4] Jessica Duffey was defendant's Recruiter and generally was the person the plaintiff maintained contact with during her employment period; whereas, Rebecca Bryson-Ritchey (as defendant's Account Manager) maintained contact with defendant's clients, including Mallinckrodt.

that was going on, the hot dog issue, the lunging over the desk, the body stares . . . the peeping over the cubicles and scaring [her] and threatening [her] when [she] caught him in some other employee's mailbox."[5] Plaintiff's Depo., pg. 255. Duffey alleges that plaintiff only expressed concern that Washington was treating her differently, he was moody, and that he yelled at her. Duffey Depo., pgs. 60, Defendant's Exhibit I. Duffey alleges that plaintiff's worse complaint regarding Washington's conduct was that he might have been "hitting on her". Duffey Depo., pg. 62; Defendant's Exhibit I. Duffey told plaintiff that if Washington's conduct did become sexual in nature to contact her or the defendant's Human Resources department immediately. Duffey Depo., pg. 63, 66; Defendant's Exhibit I. Plaintiff did not want to contact Human Resources at that time. Duffey Depo., pg. 63. Duffey did not contact Human Resources on plaintiff's behalf because she believed the conversation she had with plaintiff was concerned with "interpersonal and conduct issues", not sexual harassment. Duffey Depo., pg. 66.

On May 5, 2004 Washington contacted Bryson-Ritchey to tell her that he had decided to terminate plaintiff's placement after consultation with Rick Roberts, Washington's supervisor. Washington Depo., pgs. 21-23, 43-44. He told her that the decision to terminate plaintiff's assignment was because "[b]asically we had gotten to an impasse which Tara told me that she would not have Amy Lukitsch review her notebook any longer. She wasn't going to make any of the corrections that would be needed to have it peer reviewed and basically stormed out of my

---

[5]Briefly, these allegations consist of 1) Washington asking her if she liked to eat hot dogs which she took as a comment regarding oral sex; 2) on one occasion she left her cubicle to go to the printer and almost ran into Washington who was standing outside her cubicle; 3) on one occasion, while sitting across a desk from him, Washington "lunged" across the desk at her; 4) she alleges that on one occasion he "peered" into her lap while she was holding papers; 5) when she found him looking at another employee's e-mail, she alleges that he stated "You really don't want a job here, do you?"; and 6) on one occasion when she was visiting with a co-worker, she observed Washington looking over the wall into her cubicle. Plaintiff' Depo., pgs. 175-76, 179, 190-91, 195, 196-197, 198-201, 256.

7

office." Washington Depo., pg. 23. Washington expressed his frustration with plaintiff to Bryson-Ritchey: "Basically I was at the end of my rope with Tara's attitude and performance." Washington Depo., pg. 23. Defendant was contractually obligated to carry out Mallinckrodt's decision to terminate plaintiff's placement. Defendant's Exhibit K.

Duffey called plaintiff to inform her of Mallinckrodt's decision to terminate her placement. Duffey offered to find plaintiff another placement but plaintiff refused Duffey's offer, telling Duffey "no, I didn't want to deal with [Kforce]." Plaintiff's Depo., pgs. 272-73; Duffey Depo., pgs. 97-98, 113-14. Plaintiff then abruptly hung up on Duffey. Plaintiff's Depo., pgs. 273-74; Duffey Depo., pgs. 114-15.

Two days later, upon plaintiff e-mailing her hours to Duffey, plaintiff came into defendant's business office asking to speak to either Duffey or Bryson-Ritchey. Plaintiff did not have an appointment with either woman, nor was either woman ever aware that plaintiff was planning on coming into defendant's corporate office. Upon being told that both women were unavailable, plaintiff requested and received a copy of her performance evaluation. Plaintiff's Depo., pgs. 274-76, 280; Duffey Depo., pgs. 111-12. Plaintiff never again contacted defendant for another placement.

Before addressing the legal issues present in the instant motion, the Court must first address the litany of new allegations of retaliation contained in the plaintiff's responsive pleading. These include the following:

> 1) Duffey failed to contact the plaintiff on May 4, 2004 regarding plaintiff's complaints of May 3, 2004;
> 2) Duffey allegedly told plaintiff on May 5, 2004 to "just leave" after plaintiff complained that her conversation with Washington earlier that day was being "taped" by Washington;
> 3) Duffey failed to provide plaintiff with a name or phone number of someone to contact in Human Resources;
> 4) Duffey, in response to plaintiff telling her that plaintiff was going to get a

8

lawyer, said "If that's the case, if that's the case";
5) Defendant failed to apologize to plaintiff after Mallinckrodt terminated her placement;
6) Upon appearing at defendant's corporate offices, plaintiff was told that Duffey and Bryson-Ritchey were unavailable because they were in a meeting;
7) Defendant's failure to interview alleged witnesses or investigate plaintiff's complaints against Washington within one (1) day of reporting same to Duffey;
8) Defendant's failure to provide plaintiff with an explanation as to why Mallinckrodt terminated her placement;
9) Duffey's failure to report plaintiff's complaints to Duffey's supervisor or defendant's Human Resources department; and
10) Defendant's alleged attainment, May 2005, of an unauthorized background check on plaintiff.

In her amended complaint[6], plaintiff states her claims of retaliation against defendant as follows:

> "That plaintiff was retaliated against by Defendant, Kforce Flexible Solutions, LLC, a subsidiary of Kforce, Inc., by being terminated from her employment with Defendant, Mallinckrodt, Inc., on May 5, 2004 and/or by Defendant, Kforce Flexible Solutions, LLC, a subsidiary of Kforce, Inc., failing to reassign Plaintiff to employment elsewhere."

Furthermore, in her amended EEOC charge, dated February 14, 2005, plaintiff only names defendant Malllinckrodt as her employer, and only relates Washington's alleged harassment and that (upon calling "the temporary agency") she "was told that Mr. Washington wanted to end my assignment at Mallinckrodt Inc., wherein I was told to turn in my badge and key and not return." Plaintiff's Exhibit 7.

As a prerequisite to filing a judicial complaint under Title VII, a plaintiff must file a timely charge of discrimination with the EEOC. Exhaustion of administrative remedies is essential because it provides the EEOC the first opportunity to investigate discriminatory practices and fulfill its roles of obtaining voluntary compliance and promoting conciliatory efforts. Shannon v.

---

[6]Counts II and IV.

9

Ford Motor Co., 72 F.3d. 678, 684 (8th Cir. 1996); Williams v. Little Rock Mun. Water Works, 21 F.3d. 218, 222 (8th Cir. 1994).

Under federal law, a plaintiff has exhausted his or her administrative remedies if "the allegations of the judicial complaint [must be] like or reasonably related to the administrative charges that were timely brought." Boge v. Ringland-Johnson-Crowley Co., 976 F.2d. 448, 451 (8th Cir. 1992) *quoting* Anderson v. Block, 807 F.2d. 145, 148 (8th Cir. 1986); *see also,* Williams , at 222; Satz v. I.T.T. Fin.Corp., 619 F.2d. 738, 741 (8th Cir. 1980). Claims may be considered "like or reasonably related" when they "could reasonably be expected to grow out of the charge of discrimination." Cobb v. Stringer, 850 F.2d. 356, 359 (8th Cir. 1988). Although an EEOC charge is to be liberally construed, "[a]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an initial failure to file a timely EEOC charge." Williams, at 223 *quoting* Babrocky v. Jewel Food Co., 773 F.2d. 857, 863 (7th Cir. 1986); Shannon, at 685; Manse v. Union Electric Co., 961 F.Supp. 1296, 1303 (E.D.Mo. 1997)(citations omitted).[7]

Plaintiff's additional claims of retaliation against defendant are not "like or reasonably related" to her allegations as stated in her amended EEOC charge (notwithstanding the fact that the charge is against Mallinckrodt only) nor the allegations present in her amended complaint. Thus, plaintiff has not administratively exhausted her new claims of retaliation against defendant and such claims will not be addressed now. The only claims that will be addressed by this Court,

---

[7]This analysis is applicable to claims brought under the MHRA. *See*, Tart v. Hill Behan Lumber Co., 31 F.3d. 668, 671-72 (8th Cir. 1994).

pursuant to the instant summary judgment motion, are plaintiff's claims of retaliation based upon termination and failure to reassign her to a new placement.

Plaintiff has presented no direct evidence of retaliation; therefore, the Court will apply the burden-shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 801-03 (1973). *See*, Gagnon v. Sprint Corp., 284 F.3d. 839, 849-50 (8th Cir. 2002). Under the burden-shifting framework of McDonnell, *supra.*, a plaintiff must first demonstrate a *prima facie* case of retaliation. If the plaintiff meets this burden, the burden shifts to the employer to rebut the *prima facie* case by articulating a legitimate, non-discriminatory reason for its adverse employment decision. If the employer meets this burden, the burden shifts back to the plaintiff to show that the employer's proffered reason was a pretex. *See*, Kasper v. Federated Mutual Ins. Co., 425 F.3d. 496, 502 (8th Cir. 2006).

To establish a *prima facie* case of retaliation, Kingsberry must show 1) she engaged in a protected activity; 2) she suffered an adverse employment action; and 3) a causal connection between the protected activity and the adverse employment action. Box v. Principi, 442 F.3d. 692, 696 (8th Cir. 2006); Kasper, at 502.[8] After careful consideration of the matter, the Court determines that plaintiff has failed to establish a *prima facie* case of retaliation on both her claims against defendant because defendant did **not** make the decision to terminate her placement at Mallinckrodt and plaintiff refused defendant's offer to place her somewhere else.

Plaintiff cannot base her retaliation claim regarding termination of her employment for the simple undisputed fact that Mallinckrodt alone decided to terminate her employment. Plaintiff has presented no evidence upon which any reasonable juror could find that defendant Kforce

---

[8]Both the McDonnell Douglas analysis and the *prima facie* standard for retaliation are applicable to Kingsberry's MHRA claims. Gagnon, at 850.

11

participated in any meaningful way in the decision to terminate her employment/placement with Mallinckrodt. All defendant did was carry out the wishes of its client as it was contractually obligated to do. Plaintiff has presented no evidence questioning the enforcablity of the contract between Kforce and defendant Mallinckrodt. Plaintiff has presented no evidence from which any reasonable juror could find that Kforce had any control or meaningful input as to Mallinckrodt's day-to-day operations, including whom Mallinckrodt chose to work in its facility. Thus, plaintiff did not suffer an adverse employment action, attributable to defendant Kforce, when Mallinckrodt decided to terminate her placement. There is no legal precedent, under Title VII, to "kill the messenger" for delivering unpleasant news.

Finally, plaintiff cannot establish a *prima facie* case of retaliation based upon her claim that defendant failed to offer or find her another placement. The undisputed fact is that defendant offered to find plaintiff another placement and plaintiff refused the offer. Plaintiff has testified that Duffey offered to find her another placement and she rebuffed the offer. After being told by Duffey that defendant would find something else for her, plaintiff replied "I said no, I didn't want to deal with them." Plaintiff's Depo., pgs. 272-73. Plaintiff reiterated this twice in her deposition:

> Q. (to plaintiff) Did you tell her [Duffey] that you were done with Kforce?
>
> A. I told her that I didn't want - - there was nothing at that point they could do for me.
>
> - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
>
> Q. (to plaintiff) Did you indicate to Ms. Duffey you didn't want anything else to do with Kforce?
>
> A. When she said that we'll find you something else, I told her no.

Plaintiff's Depo., pg. 273.

Plaintiff's apparent change of heart regarding another placement by defendant Kforce does not change the fact that, during the relevant time-period, defendant offered to find her another placement and she refused the offer. Defendant was not thereafter obligated, legally or otherwise, to go ahead and find her another placement in light of her hostile response to its initial offer.

Plaintiff has not presented any evidence from which any reasonable juror could find that defendant retaliated against plaintiff by not finding her another placement after she had rejected its offer to find her another placement.

In light of the above-findings, the Court concludes that plaintiff has failed to establish a *prima facie* case of retaliation against defendant Kforce, and as a matter of law, defendant Kforce is entitled to summary judgment.

Dated this __2nd__ day of August, 2006.

*Stephen N. Limbaugh*
_____
SENIOR UNITED STATES DISTRICT JUDGE