**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

TARA M. KINGSBERRY,          )
                                      )
     Plaintiff,            )
                                        )
     vs.                    )        **Case No. 4:05CV978SNL**
                                        )
MALLINCKRODT, INC. and       )
KFORCE SOLUTIONS, LLC.,     )
                                        )
     Defendants.        )

## MEMORANDUM

Plaintiff has filed this amended Title VII and Missouri Human Rights Act (MHRA) employment discrimination complaint alleging sexual harassment and unlawful termination of employment in retaliation for complaining of sexual harassment against defendant Mallinckrodt, and unlawful termination and failure to reassign in retaliation for complaining of sexual harassment against defendant KForce Solutions (hereinafter referred to simply as Kforce)[1]. This matter is before the Court on defendant Mallinckrodt's motion for summary judgment (#46), filed May 15, 2006. Extensive responsive pleadings have been filed and this matter is now ripe for disposition. This cause of action is currently set for jury trial on the Court's trial docket of August 21, 2006.

Courts have repeatedly recognized that summary judgment is a harsh remedy that should be granted only when the moving party has established his right to judgment with such clarity as not to give rise to controversy. New England Mut. Life Ins. Co. v. Null, 554 F.2d 896, 901 (8th

---

[1]The Court recently granted defendant Kforce's motion for summary judgment (#43) and dismissed it from this cause of action. See, Court Order #69, filed August 2, 2006.

Cir. 1977). Summary judgment motions, however, "can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." Mt. Pleasant v. Associated Elec. Coop. Inc., 838 F.2d 268, 273 (8th Cir. 1988).

Pursuant to Fed.R.Civ.P. 56(c), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, Inc., 368 U.S. 464, 467, 82 S. Ct. 486, 7 L.Ed.2d 458 (1962). The burden is on the moving party. Mt. Pleasant, 838 F.2d at 273. After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth specific facts showing that there is sufficient evidence in its favor to allow a jury to return a verdict for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986); Celotex Corp. v. Citrate, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).

In passing on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. Buller v. Buechler, 706 F.2d 844, 846 (8th Cir. 1983). The court is required to resolve all conflicts of evidence in favor of the nonmoving party. Robert Johnson Grain Co. v. Chem. Interchange Co., 541 F.2d 207, 210 (8th Cir. 1976). Although summary judgment should seldom be granted in employment discrimination cases, it is proper in those cases wherein the plaintiff fails to establish a factual dispute on an essential element of the case. Snow v. Ridgeview Medical Center, 128 F.3d. 1201, 1205 (8th Cir. 1997),

*citing* <u>Bialas v. Greyhound Lines, Inc.</u>, 59 F.3d. 759, 762 (8th Cir. 1995). "Although summary judgment is to be used sparingly in employment discrimination cases, it is appropriate where one party has failed to present evidence sufficient to create a jury question as to an essential element of its claim." <u>Whitley v. Peer Review Sys., Inc.</u>, 221 F.3d. 1053, 1055 (8th Cir. 2000)(citations omitted). The Eighth Circuit has "repeatedly cautioned that summary judgment should seldom be granted in the context of employment actions, as such actions are inherently fact based. Summary judgment is not appropriate unless all the evidence points one way and is susceptible to no reasonable inferences sustaining the position of the nonmoving party." <u>Hindman v. Transkrit Corp.</u>, 145 F.3d. 986, 990 (8th Cir. 1998)(citations omitted); *see,* <u>Mayer v. Nextel West Corp.</u>, 318 F.3d. 803, 806 (8th Cir. 2003) *citing* <u>Keathley v. Ameritech Corp.</u>, 187 F.3d. 915, 919 (8th Cir. 1999). However, it is clear that to survive summary judgment, a plaintiff must support his/her allegations with sufficient probative evidence to permit a finding in the plaintiff's favor based upon more than mere speculation, conjecture, or fantasy. <u>Putnam v. Unity Health Systems, Inc.</u>, 348 F.3d. 732, 733-34 (8th Cir. 2003) *quoting* <u>Wilson v. Int'l Bus. Mach. Corp.</u>, 62 F.3d. 237, 241 (8th Cir. 1995); <u>Girten v. McRentals, Inc.</u>, 337 F.3d. 979, 982 (8th Cir. 2003)(plaintiff's theory of age discrimination failed "[b]ecause this theory is supported more by contentions and speculation than evidence, it is insufficient to withstand summary judgment.").

Although the Court is required to view the facts in the light most favorable to the non-moving party, it should not accept "unreasonable inferences or sheer speculation as fact.". <u>Howard v. Columbia Public School District, et. al.</u>, 363 F.3d. 797, 800 (8th Cir. 2004). A plaintiff may not "simply point to allegations made in [her] complaint but must identify and provide evidence of `specific facts creating a triable controversy." <u>Howard</u>, at 800 *quoting* <u>Jaurequi v. Carter Manufacturing Co.</u>, 173 F.3d. 1076, 1085 (8th Cir. 1999). Furthermore, a

plaintiff may not simply provide a massive record expecting the Court to sift through it in an effort to find support for the plaintiff's allegations. Howard, at 800-01 (citations omitted). The Court is only obligated to consider "admissible evidence and disregard portions of various affidavits and depositions that were made without personal knowledge, consist of hearsay, or purport to state legal conclusions in fact.". Howard, at 801 *citing* Shaver v. Independent Stave Co., 350 F.3d. 716, 723 (8th Cir. 2003).

The facts as pertaining to the instant summary judgment motion are largely undisputed.[2] (Former) defendant Kforce is a professional staffing firm that provides temporary and permanent staffing solutions for employers and job seekers in specialty skill areas, including but not limited to, the areas of Finance and Accounting, Technology, Healthcare, Clinical Research and Scientific

---

[2]Plaintiff has admitted all facts as contained in defendant Mallinckrodt's statement of uncontroverted material facts (#47), filed May 15, 2006 except for the following paragraphs: 15, 28, 31, 33, 36, 45, 46, 47, 57, 63, and 67. Plaintiff's denials as to these noted paragraphs are nothing more than reinterpretations of the fact noted. For example, as to ¶45 which states "Kingsberry did not complain about sexual harassment to anyone at Mallinckrodt.", plaintiff denies this with the disclaimer that although she never reported any sexual harassment by her supervisor Michael Washington to defendant Mallinckrodt's management (or even complain about his conduct to Washington), she states that she told unidentified "co-workers". Furthermore, several of her denials are based upon "additional allegations" that she failed to make in her amended complaint or to raise at her deposition. *See*, denials to ¶¶57, 63, and 67. This change in her testimony will be addressed further in the memorandum. Finally, the Court has carefully reviewed "Plaintiff's Additional Statement of Uncontroverted Material Facts" (#54) and finds that it consists mostly of hearsay, legal conclusions, suppositions, and matters totally unrelated to the allegations asserted against defendant Mallinckrodt. For example ¶4 and its subsections are all incidents which plaintiff interprets as being "sexually harassing" such as being asked whether she likes hotdogs is believed by her to be an inquiry as to whether she likes oral sex and when Washington called her to inquire about her work, he talked to her in a "romantic tone of voice". Such interpretations, opinions, and conclusions are not "material facts". Finally, plaintiff offers the affidavit of Jenny Allen in support of her "material facts". Ms. Allen, who has filed her own sexual harassment lawsuit against defendant Mallinckrodt, attests to Washington making "googly eyes" at plaintiff, following plaintiff around like a "love-sick puppy dog", etc. Ms. Allen's affidavit is replete with her opinion and hearsay and although not stricken, it will only be given minimal weight. Thus, the Court will not strike either Ms. Allen's affidavit nor the plaintiff's own material facts pleading; however, the Court will only consider those statements it deems to be factual in nature and properly supported by reference to the evidentiary record.

Services.  Defendant Mallinckrodt[3] manufactures and distributes a variety of healthcare related products.  Defendant's Exhibit 8- Declaration of Rick Roberts.  On or about March 24, 2003 defendant became one of Kforce's clients by executing a Client Staffing Agreement.  This Client Staffing Agreement provided that each placement by Kforce with Mallinckrodt was terminable by either party.[4]

In early 2004, defendant contacted Kforce needing a temporary employee to fill an Analytical Chemist position in its Research and Development Department.  Defendant's Exhibit 2 - Deposition of Michael Washington, pg. 8.  On February 13, 2004 Kforce and plaintiff entered into a Professional Service Agreement in with plaintiff agreed that she would be performing scientific services for Kforce's client Mallinckrodt "at the time and place designated by the Client, as directed by the Client, and for the length of time designated by the Client."[5]

Plaintiff was placed at Mallinckrodt as an Analytical Chemist under the supervision of Michael Washington.  Plaintiff's Depo., pgs. 127, 135, 173; Washington Depo., pgs. 8-10; Roberts' Declaration.  Plaintiff's work required her to follow established analysis procedures, record data, perform calculations, and write reports.  Roberts' Declaration.  Plaintiff was required to familiarize herself with Mallinckrodt's lab procedures prior to her first assignment.  Plaintiff's Depo., pg. 174.

---

[3]When the Court refers to "defendant" in this memorandum, the reference is to defendant Mallinckrodt unless otherwise noted.

[4]The Client Staffing Agreement was provided by Kforce in connection with its summary judgment motion and the Court takes judicial notice of its existence and contents.

[5]The Professional Service Agreement was provided by Kforce in connection with its summary judgment motion and the Court takes judicial notice of its existence and contents.  The "Client" referenced in said agreement is defendant Mallinckrodt.

All Mallinckrodt chemists, including plaintiff, were required to keep a record in a lab notebook documenting all their lab work. Plaintiff's Depo., pgs. 200-01; Roberts Declaration; Defendant's Exhibit 7. Under defendant's lab protocol, the lab notebook was to be "peer-reviewed" within ten (10) days of the lab work being completed. Plaintiff's Depo., pgs. 207, 218; Defendant's Exhibit 6 - Declaration of Michael Washington. The purpose of the peer review is to ensure that a second chemist has read and understood the documentation. Plaintiff's Depo., pg. 208; Washington Depo., pgs. 49-51. The lab notebooks and peer review of same is essential for both patents and regulatory compliance. Defendant's Exhibit 3 - Deposition of Rebecca Bryson-Ritchey, pgs. 24; Defendant's Exhibit 4 - Deposition of Jessica Duffey, pg. 52; Washington Declaration.

In March 2004, Washington assigned one of the senior research chemists in his group[6], Amy Lukitsch, to train, guide and informally monitor plaintiff's work. One of the tasks Ms. Lukitsch assisted plaintiff in learning was how to conduct "assays"[7] to determine water content using a Karl Fischer coulometric instrument. Later in March 2004, when one of defendant's manufacturing facilities requested a "Karl Fischer" analysis of certain product samples, Washington assigned plaintiff to conduct the tests. Washington Declaration. Plaintiff spent the bulk of her time at Mallinckrodt working on the Karl Fischer assay analysis. Plaintiff's Depo., pg. 322.

In mid-April Kforce asked defendant to provide it with an employee evaluation of the plaintiff to date. Duffey Depo., pgs. 36-7; Washington Declaration. Ms. Bryson-Ritchey

---

[6]Washington's "group" included plaintiff, Rana Kumar, Jo Moore, and Amy Lukitsch.

[7]An assay is defined as "a procedure where the concentration of a component part of a mixture is determined." Defendant's Memorandum in Support of Motion for Summary Judgment (#48), pg. 3 n.1.

completed the employee evaluation form after consultation with Washington. Duffey Depo., pgs. 36-40; Bryson-Ritchey Depo., pgs. 20-21. Washington mentioned that plaintiff was sometimes defensive and argumentative, and that there were problems with her documentation. Defendant's Exhibit 5 - Kingsberry Job Performance Evaluation; Washington Declaration.

Shortly after the evaluation, Washington reviewed the plaintiff's lab notebook and discovered that her entries were not being peer reviewed as required. Washington Depo., pg. 79. This was brought to her attention and she was instructed to get her documentation peer reviewed. On or about April 19, 2004 plaintiff had someone outside of Washington's group peer review her lab notebook. Defendant's Exhibit 7, Washington Depo., pgs. 49-51. This was inappropriate under Mallinckrodt protocol and Washington instructed plaintiff to get her notebook reviewed by a chemist in Washington's group. Washington Depo., pgs. 49-51; Washington Declaration.

In late April 2004 plaintiff asked Lukitsch to peer review her lab notebook. Although Lukitsch was able to sign off on the preliminary pages of the Karl Fischer assay analysis work, Lukitsch recognized a problem with the equation plaintiff was using, and she requested Kingsberry to redo the equation. Plaintiff refused to do so and Lukitsch told her that she could not sign off on the Karl Fischer water assay results unless plaintiff could explain her equations or redo the work. Plaintiff's Depo., pgs. 205, 210, 211, 319.

Washington was told that there had been a "heated exchange" between Lukitsch and plaintiff regarding Lukitsch's peer review of plaintiff's lab notebook.[8] On Friday, April 30, 2004

---

[8]Plaintiff claims that she never had an argument with Lukitsch "with regard to Plaintiff's performance of the Karl Fischer equation to get the results of the Karl Fischer water assay test." She states the issue was "[r]ather, Amy Lukitsch was just not sure if the equation was right." Plaintiff's Response to Defendant's Statement of Uncontroverted Material Facts (#54), pg. 6, ¶28. However, the material fact expressed in ¶26 is that Washington was told of an argument; not whether an argument had actually taken place. Furthermore, plaintiff admits everything else regarding ¶¶25-28; i.e., Lukitsch did not agree with whatever equation plaintiff was using,

plaintiff called in sick.  During her absence, Washington reviewed her lab notebook and although he approved a few additional pages, he too was unable to understand the equation used by plaintiff.  Washington Declaration.

On Monday, May 3, 2004 Washington returned plaintiff's lab notebook to her and requested that she complete her work, by changing the equation used or demonstrating the basis for its use, so the test results could be peer reviewed.[9]  Plaintiff then called Duffey, and for the first time, complained about how she was being treated by Washington.  Duffey Depo., pg. 60. Duffey did not report this conversation to defendant's personnel, including Washington, nor to Kforce's Human Resources department because she believed that Kingsberry was complaining about interpersonal matters regarding her inability to get along with Washington.  Duffey did not believe that plaintiff's complaints about Washington were sexually charged or in violation of Kforce's sexual harassment policy.  Duffey Depo., pgs. 29, 144-45.  Other than Duffey, plaintiff did not discuss her complaints[10] regarding Washington to any management personnel at Mallinckrodt.  Plaintiff's Depo., pg. 364.

On Wednesday, May 5, 2004 Washington met with plaintiff in his office to discuss her lab notebook.  Plaintiff and Washington disagreed as to the adequacy of her lab notebook and Washington told plaintiff had did not like her attitude.  Plaintiff's Depo., pgs. 260-61; Washington

_____

requested plaintiff to either explain her methodology or change it, plaintiff refused, and Lukitsch would not sign off on the Karl Fischer water assay results.

[9]Plaintiff asserts that Washington was not critical of her work; rather, he was critical of the fact that her lab notebook had not been peer reviewed in a timely fashion.

[10]Whether or not her complaints were of sexual harassment or just harassment in general is immaterial with regard to the fact that she never brought her complaints to any management personnel at Mallinckrodt.

Depo., pg. 23; Washington Declaration.[11] Plaintiff ended the discussion by walking out of Washington's office. Plaintiff's Deposition, pg. 263.

Following the meeting with plaintiff, Washington discussed Kingsberry with his supervisor Rick Roberts, Director of Research and Development for defendant. They discussed Kingsberry's job performance and her insubordination toward Washington and her co-workers. Washington Depo., pgs. 16-17; Roberts Declaration. Roberts recommended that Washington terminate plaintiff's assignment with defendant, Washington agreed, and called Bryson-Ritchey to tell her that plaintiff's assignment had been terminated and defendant did not wish for a replacement. Washington Depo., pgs. 15-16, 30; Roberts Declaration, Washington Declaration.

Duffey overheard Bryson-Ritchey on the phone talking to Washington on May 5 when he contacted Kforce to terminate plaintiff's assignment, but did not hear the particulars nor hear Bryson-Ritchey relay any information regarding plaintiff's May 3rd conversation with Duffey. Duffey Depo., pgs. 142-43. Upon being told that defendant wanted to terminate plaintiff's assignment effective immediately, Duffey called plaintiff. Duffey offered to find plaintiff another assignment but plaintiff rejected the offer and then hung up on Duffey. Plaintiff's Depo., pgs. 272-74; Duffey Depo., pgs. 97-98, 113-15.

Plaintiff had no further contact with defendant, but appeared at Kforce's corporate office two (2) days later unannounced. She wanted to see either Duffey or Bryson-Ritchey but both were unavailable. She requested her written job performance evaluation and received same. Plaintiff's Depo., pgs. 274-76, 280; Duffey Depo., pgs. 111-12.

---

[11]The plaintiff and Washington differ as to the particulars of the discussion and whether plaintiff refused to change her documentation and/or have Ms. Lukitsch review it. However, plaintiff's deposition testimony clearly indicates that she and Washington did not have a friendly discussion regarding her work or attitude.

Defendant contends that plaintiff's claim for sexual harassment fails as a matter of law because the conduct alleged does not rise to the level of actionable harassment. It further contends that plaintiff's claim for retaliation must also fail because plaintiff cannot establish a causal link between her protected activity (complaining to Duffey on May 3rd) and defendant's decision to terminate her assignment because defendant was unaware of plaintiff's complaint when it made the decision to terminate her assignment. Furthermore, defendant argues that plaintiff cannot establish pretext because she was terminated for insubordination and failure to establish the validity of the Karl Fischer water assay work by getting her lab notebook peer reviewed in a timely fashion. Plaintiff contends that the alleged conduct does rise to the level of actionable harassment, that the fact her assignment was terminated two (2) days after she complained to Duffey establishes "temporal proximity", and that knowledge by defendant has been established by the way Washington and Roberts "acted" on May 5, 2004 towards her. She further contends that Washington and Roberts had "knowledge" of her complaints to Duffey (prior to her termination) because of her "observations" of certain conduct on their behalf. Finally, she argues that defendant's reason(s) for terminating her are a pretext because 1) she wasn't told at her 90-day review that her job was in jeopardy; and 2) a fellow employee wasn't terminated although she believes his lab notebook was not peer-reviewed in a timely manner.

After careful consideration of the motion, the parties' pleadings, the evidentiary record before the Court, and the relevant caselaw, the Court will grant defendant's motion for summary judgment.

## Sexual Harassment

As to both plaintiff's Title VII and MHRA sexual harassment claims, the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) will be applied. *See,*

Nitsche v. CEO of Osage Valley Electric Cooperative, 446 F.3d. 841, 845 (8th Cir. 2006);

Breeding v. Arthur J. Gallagher & Co., 164 F.3d. 1151, 1156 (8th Cir. 1999). Under this

framework, plaintiff must first establish a *prima facie* case of hostile work environment sexual

harassment. If the plaintiff meets this burden, the burden shifts to the employer to rebut the *prima

facie* case by articulating a legitimate, non-discriminatory reason for the adverse employment

action. If the employer meets its burden of production, the presumption of unlawful conduct

disappears, and the plaintiff is required to prove by a preponderance of the evidence that the

employer's conduct was a pretext for unlawful conduct.

To establish a *prima facie* case of hostile work environment sexual harassment[12],

Kingsberry must demonstrate: 1) she belongs to a protected group; 2) she was subjected to

unwelcome harassment; 3) the harassment was based on sex; and 4) the harassment was

sufficiently severe or pervasive as to affect a term, condition, or privilege of employment.

Cottrill, et. al. v. MFA, Inc., 443 F.3d.629, 636 (8th Cir. 2006); Cheshewalla, et. al. v. Rand &

Son Construction Co., 415 F.3d. 847, 850 (8th Cir. 2005); Hesse v. Avis Rent-A-Car System,

394 F.3d. 624, 629 (8th Cir. 2005). If Kingsberry establishes that a supervisor with authority

over her (in this case, Washington) created a hostile work environment, defendant can be

vicariously liable. Hesse, at 629 *citing* Faragher v. City of Boca Raton, 524 U.S. 775, 780 (1998)

and Burlington Industries v. Ellerth, 524 U.S. 742, 763 (1998); *see also*, Cheshewalla, at 850.

Mallinckrodt can raise an affirmative defense to liability by showing: "(a) that the employer

exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and

(b) that the plaintiff employee unreasonably failed to take advantage of any preventive or

---

[12]Since the alleged harassment was by a supervisor, the elements for the *prima facie* case differ slightly from the elements required if the alleged harassment were by a co-worker.

corrective opportunities provided by the employer or to avoid harm otherwise." Hesse, at 629 *quoting* Ellerth, 524 U.S. at 765.

Kingsberry must "clear a high threshold to demonstrate actionable harm, for `complaints attacking the ordinary tribulations of the workplace, such as sporadic use of abusive language, gender-related jokes, and occasional teasing' obtain no remedy." Nitsche, at 845-46 *quoting* Faragher, 524 U.S. at 788. The environment must be objectively hostile or abusive to a reasonable person and subjectively hostile or abusive to the plaintiff. Nitsche, at 846; Cottrill, at 636; Peterson v. Scott County, et. al., 406 F.3d. 515, 524 (8th Cir. 2005). To be actionable the conduct at issue "must be extreme and not merely rude or unpleasant." Nitsche, at 846 *quoting* LeGrand v. Area Resources for Community & Human Services, 394 F.3d. 1098, 1101 (8th Cir. 2005). General harassment in the workplace is not actionable under Title VII. Hesse, at 630 *citing* Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75, 80 (1998). "Title VII's purpose is not to smooth the rough edges of our daily discourse, nor to provide a federal cause of action for every slight." Powell v. Yellow Book USA, Inc., 445 F.3d. 1074, 1077 (8th Cir. 2006)(citations omitted). "Such standards are demanding, for `Title VII does not prohibit all verbal or physical harassment' and is not `a general civility code for the American workplace.'" Nitsche, at 846 *quoting* Oncale, 523 U.S. at 80.

In order to survive summary judgment, Kingsberry must present evidence from which a reasonable jury could conclude that the harassment was sufficiently "severe or pervasive" to affect a term, condition, or privilege of her employment at Mallinckrodt. Powell, at 1077 *citing* Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993). In determining whether a hostile work environment existed, a court must examine the totality of the circumstances, including the frequency of the offending conduct, its severity; whether it was physically threatening or

humiliating, as opposed to merely an offensive utterance; and whether it unreasonably interfered with work performance. Nitsche, at 846 *citing* Harris, 510 U.S. at 23; Powell, at 1077 *citing* Erenberg v. Methodist Hosp., 357 F.3d. 787, 792 (8th Cir. 2004); Cottrill, at 636 *citing* Faragher, 524 U.S. at 787-88; Hesse, at 630 *citing* Harris, *supra*. "Allegations of a few isolated or sporadic incidents will not suffice; rather the plaintiff must demonstrate the alleged harassment was `so intimidating, offensive, or hostile that it poisoned the work environment.'" Nitsche, at 864 *quoting* Tuggle v. Mangan, 348 F.3d. 714, 720 (8th Cir. 2003)(internal citation omitted). Furthermore, Kingsberry (as a Title VII plaintiff) "may only rely on evidence relating to harassment of which she was aware during the time that she was allegedly subject to a hostile work environment." Cottrill, at 636 *quoting* Hirase-Doi v. U.S. West Communications, Inc., 61 Fl3d. 777, 782 (10th Cir. 1995). Finally, at the summary judgment stage, the Court "do[es] not consider portions of depositions that were made without personal knowledge or consist of hearsay." Cottrill, at 635-36 *quoting* Murphy v. Mo. Dept. of Corrections, 372 F.3d. 979, 982 (8th Cir. 2004).

Regarding Washington's alleged inappropriate conduct[13], Kingsberry alleges that:

---

[13]Plaintiff's allegations in her responsive pleading differ from her deposition testimony. Although ambiguities and some conflicts in deposition testimony are matters generally left to a jury to resolve, a court may grant summary judgment "where a party's sudden and unexplained revision of testimony creates an issue of fact where none existed before." Wilson v. Westinghouse Electric Corp., 838 F.2d. 286, 289 (8th Cir. 1988). Essentially, in her responsive pleading, plaintiff "embellishes" her deposition testimony. For example, plaintiff testified that Washington only looked over her cubical wall on one occasion (Plaintiff's Depo, pg.179); yet, in her response asserts that he did so several times; plaintiff testified that Washington only followed closely behind her while going downstairs on one occasion (Plaintiff's Depo., pg. 96); yet, in her response asserts that this happened several times; and plaintiff testified that she considered only the "hot dog" comment to be a direct sexual comment (Plaintiff's Depo., pg. 307); yet now asserts that there were other inappropriate comments sexually in nature. However, the Court will consider her allegations in total and give her "embellishments" the weight due them based upon the objective evidentiary record.

- Washington stared at her on at least two (2) occasions "right between her legs";

- On one (1) occasion, Washington leaned over her cubicle wall to observe her;

- On three (3) occasions, Washington gave her a "body scan";

- Once, while sitting in his office, across from him at his desk, while holding papers in her lap and discussing her work, Washington "lunged" at her;

- While going down stairs, Washington followed closely behind her but did not touch her;

- Washington asked her if she "liked eating hotdogs" which plaintiff took as an inquiry regarding oral sex;

- Washington, on one (1) occasion commented to plaintiff "I'm wondering if you'll fit in" which plaintiff took as a request for sexual intercourse;

- In plaintiff's job performance evaluation, Bryson-Ritchey noted an "S" for a Satisfactory rating regarding plaintiff's ability to communicate, cooperate, and work with co-workers but next to the "S" wrote "No(But) We have to do it this way because we have to." which plaintiff interprets as noting that she was not granting sexual favors (allegedly to Washington);

- Plaintiff asserts that Washington generally used a "romantic tone of voice" when speaking to her, followed her around like a "love-sick puppy", treated her "like his girl friend", became "mad and moody" when she didn't give him attention, and was "possessive" of her.

Plaintiff concedes that Washington never asked her to be social with him outside of work, never asked her pointedly for sexual favors, never touched her, never asked her out to lunch, never asked her out to dinner (or anything that could be construed as a "date"); and that there was never anything inappropriate about her work assignments.

Viewing the evidence, both objectively and subjectively, in the light most favorable to the plaintiff, fails to give rise to actionable conduct under Title VII/MHRA. *Assuming arguendo*, that

Washington did engage in the conduct alleged, none of it was physically threatening or violent, overtly sexual in nature, and did not interfere with plaintiff's work performance.[14]  Such comments/behavior were not so frequent, intimidating, offensive, or hostile to have poisoned the work environment.  *See*, Nitsche, at 846.[15]  In fact, plaintiff never said anything to Washington about his comments or conduct, never reported Washington's "offensive behavior" to Rick Roberts, and did not report a single "offensive" comment or conduct to Duffey (although she had contact with Duffey several times over the relevant time-period) until her failure to abide by defendant's lab protocol was seriously questioned by Washington.

Having viewed the evidentiary record in a light most favorable to the plaintiff, the Court concludes that Kingsberry has failed to raise a genuine issue of material fact regarding whether the alleged harassment affected a term, condition, or privilege of employment.  Remembering that "Title VII is `not designed to purge the workplace of vulgarity'", the Court finds that plaintiff's

---

[14]Plaintiff testified that she had agreed that her lab notebook was not timely reviewed and that she needed to comply with defendant's protocol; however, there was no testimony whatsoever that Washington's conduct interfered with her ability to get her lab notebook peer-reviewed in a timely fashion, or her ability to perform any of the work assigned to her.

[15]Kingsberry's complaints are significantly less intolerable than other cases in which the Eighth Circuit has found a hostile work environment did not exist.  *See*, Nitsche, *supra*. (finding no actionable sexual harassment hostile work environment claim based upon twenty (20) years of "sexual content abundant in [supervisor's] repertoire of ribaldry); Cottrill, *supra*. (finding no sexual harassment hostile work environment claim based on supervisor using peephole in women's bathroom to watch plaintiff while she used the facilities); LeGrand, *supra*. (finding no actionable sexual harassment hostile work environment claim where alleged harasser physically touched the plaintiff and asked him to watch pornographic movies with him); Tuggle, *supra*. (finding no actionable sexual harassment hostile work environment claim based upon alleged harasser's inappropriate direct sexual comments, posting a photograph of plaintiff's "clothed rear end", and giving plaintiff undesirable work assignments); Duncan v. General Motors, 300 F.3d. 928 (8th Cir. 2002)(no sexual harassment hostile work environment claim wherein alleged harasser propositioned the plaintiff for a relationship with him, improperly touched the plaintiff's hand several times, requested the plaintiff to draw a sexually graphic planter in his office for a promotion, displayed graphic and sexually explicit images on his computer for the plaintiff to see, and asked the plaintiff to type a document for him containing sexually offensive items).

interpretations and speculations as to the nature of the alleged comments/conduct fails to demonstrate an actionable sexual harassment hostile work environment claim.

### Retaliation

Plaintiff has presented no direct evidence of retaliation; therefore, the Court will apply the burden-shifting analysis established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 801-03 (1973). Wallace v. DTG Operations, 442 F.3d. 1112, 1119 (8th Cir. 2006); Kasper v. Federated Mutual Ins. Co., 425 F.3d. 496, 502 (8th Cir. 2005). Under the burden-shifting framework of McDonnell, *supra.*, a plaintiff must first demonstrate a *prima facie* case of retaliation. If the plaintiff meets this burden, the burden shifts to the employer to rebut the *prima facie* case by articulating a legitimate, non-discriminatory reason for its adverse employment decision. If the employer meets this burden, the burden shifts back to the plaintiff to show that the employer's proffered reason was a pretext. The ultimate question in any retaliation case is whether the employer's adverse action against the employee was motivated by a retaliatory intent; and, the ultimate burden of proof or persuasion to show retaliatory intent remains at all times with the plaintiff. Wallace, at 1119.

To establish a *prima facie* case of retaliation, Kingsberry must show 1) she engaged in a protected activity; 2) she suffered an adverse employment action; and 3) a causal connection between the protected activity and the adverse employment action.[16] Wallace, at 1119; Kasper, at 502; Cheshewalla, at 851; Hesse, at 632. The plaintiff's burden at the *prima facie* stage is not onerous, and "[a] minimal evidentiary showing will satisfy this burden of production. Wallace, at 1119 *quoting* Rodgers v. U.S. Bank, N.A, 417 F.3d. 845, 850 (8th Cir. 2005)(internal citation

---

[16]Both the McDonnell Douglas analysis and the *prima facie* standard for retaliation are applicable to Kingsberry's MHRA claim. *See*, Gagnon v. Sprint Corp., 284 F.3d. 839, 850 (8th Cir. 2002).

omitted).  After careful consideration of the matter, the Court finds that plaintiff has failed to establish a *prima facie* case of retaliation; and, *assuming arguendo* that she had made a *prima facie* case, she has failed to show pretext and retaliatory intent on the part of defendant.

Firstly, plaintiff has failed to show that she engaged in a protected activity as regards this defendant.  It is undisputed that she alleges she was sexually harassed by her supervisor (Washington), an employee of defendant Mallinckrodt.  It is further undisputed that she never complained to Washington about his alleged harassment, nor did she complain to Rick Roberts (Washington's supervisor), or any management personnel at Mallinckrodt about the alleged harassment during her employment at Mallinckrodt.  The only person she complained to about Washington's conduct was Duffey, an employee of (former) defendant Kforce.  As to her complaint to Duffey, plaintiff has presented no affirmative evidence that plaintiff's complaint about Washington was ever communicated to any management personnel at Mallinckrodt prior to her termination.[17]  In order for Kingsberry to establish a causal link, Roberts and Washington must have known of her complaint of sexual harassment before they made the decision to terminate plaintiff's employment/assignment.  Smith v. Riceland Foods, Inc., 151 F.3d. 813, 818 (8th Cir. 1998)(*citing* Simon v. Simmons Foods, Inc., 49 F.3d. 386, 389 (8th Cir. 1995)); *see also*, Kasper, at 503 n.3 *citing* Brower v. Runyon, 178 F.3d. 1002, 1003 (8th Cir. 1999).  Both Roberts and Washington have testified (by deposition or affidavit) that neither one was aware of plaintiff's complaint to Kforce about Washington's conduct prior to the decision to terminate her employment.  Duffey has testified that she did not tell anyone at Mallinckrodt of plaintiff's complaint to her about Washington's conduct.  Bryson-Ritchey testified that she didn't recall telling Washington (via telephone) about plaintiff's complaint; and, Duffey testified that she did

---

[17]The Court will address this point more specifically later in this memorandum.

17

not hear Bryson-Ritchey tell Washington of plaintiff's complaint while Bryson-Ritchey was on the phone with Washington. Thus, since plaintiff did not complain about Washington's alleged inappropriate comments/behavior to Mallinckrodt prior to her termination, she did not engage in a protected activity as regards her claim of retaliation against this defendant.

Secondly, plaintiff fails to demonstrate a causal connection between her complaint to Duffey and the termination of her employment. Plaintiff asserts that she has established a causal connection based upon two (2) factors: 1) her termination occurred two (2) days after her telephone conversation with Duffey; and 2) Washington and Roberts were aware of her complaint because of their "suspicious" behavior following her phone call to Duffey. Both of these grounds are meritless.

"An inference of a causal connection between a charge of discrimination and termination can be drawn from the timing of the two events, but in general more than a temporal connection is required to present a genuine factual issue on retaliation." Wallace, at 1119 *citing* Peterson v. Scott County, 406 F.3d. 515, 524 (8th Cir. 2005)(internal citations omitted). Although such a close proximity would, under normal circumstances, minimally raise an inference of a causal connection, the Court is reluctant to declare this so because plaintiff has nothing else to offer in addition to this fact alone. Furthermore, it is relevant to consider that between the time of her phone call to Duffey and Washington's phone call to Bryson-Ritchey terminating plaintiff's assignment, plaintiff and Washington had a confrontation in his office regarding her job performance and she stormed out. Under these circumstances, temporal proximity alone does not allow Kingsberry to prevail because no reasonable juror could conclude from plaintiff's scant evidence that Washington had retaliated against plaintiff.

In order to buttress her temporal proximity argument, plaintiff attempts to show that Washington and Roberts had knowledge of her complaint prior to making the decision to terminate her assignment. She bases this "knowledge" on her observations and interpretations of their behavior between May 3 and May 5, 2004. She asserts that 1) on May 4th, Roberts walked three (3) times through her work area; 2) on May 4th, both Roberts and Washington came in late to the monthly staff meeting; and 3) when Washington came into the staff meeting, he would not look her in the eye and sat at the other end of the room.

Although plaintiff's burden at the *prima facie* stage is not onerous, this type of speculation and conjecture fails to even meet the lowest of levels for establishing a causal connection. For example, Roberts is the director of research for the division in which plaintiff worked and for him to walk through her work area, which was also other employees' work areas, cannot be reasonably construed as anything more than a supervisor keeping in contact with his subordinates. For plaintiff to construe his conduct as anything more than this is simply nothing but speculation. As to coming late to a staff meeting, any reasonable juror could find a hundred reasons why any person might be late to a staff meeting. Finally, even plaintiff's own deposition testimony concedes that Washington sat in his usual seat at the staff meeting. Plaintiff's Depo., pgs. 268-70.

Plaintiff offers nothing more than her opinion of the meaning of seemingly benign behavior on the parts of Washington and Roberts. Plaintiff has failed to demonstrate knowledge on the part of defendant from which any reasonable juror could conclude that the timing of the termination decision establishes a causal connection between her complaint to Duffey and her subsequent discharge.

Even if plaintiff had managed to establish a *prima facie* case of retaliation, defendant has articulated a legitimate, non-discriminatory reason for its decision to discharge her; i.e., her insubordination and failure to have her lab notebook peer-reviewed in a timely fashion. The burden of persuasion as to pretext now rests with the plaintiff, and she has failed to meet this burden.

Plaintiff may demonstrate pretext by two different methods.

"First, a plaintiff may succeed `indirectly by showing that the employer's proffered explanation is unworthy of credence.' Under this method, the employee must rebut the employer's `underlying factual claims' by establishing that the employer's explanation has no basis in fact.

Second, the plaintiff may prove pretext `directly by persuading the court that a [prohibited] reason more likely motivated the employer.' Under this method the employee rebuts `the employer's ultimate factual claim regarding the absence of retaliatory intent.' The employee must demonstrate `that sufficient evidence of intentional retaliation exists for a jury to believe the plaintiff's allegations and find that the proffered explanation was not the true motivating explanation.' Thus, the employee `may concede that the proffered reason for termination, *would have been* a sufficient basis for the adverse action while arguing that the employer's proffered reason was not the true reason for the action.'

An employee may prove pretext by demonstrating that the employer's proffered reason has no basis in fact, that the employee received a favorable review shortly before he was terminated, that similarly situated employees who did not engage in the protected activity were more leniently treated, that the employer changed its explanation for why it fired the employee, or that the employer deviated from its policies."

Stallings v. Hussmann Corp., 447 F.3d. 1041, 1052 (8th Cir. 2006)(internal citations omitted);

Wallace, at 1120; Smith v. Allen Health Systems, 302 F.3d. 827, 834-35 (8th Cir. 2002).

In the present case, Kingsberry asserts that she has established pretext because 1) her discharge came only two (2) days after her telephone conversation with Duffey; 2) Washington and Roberts acted "differently" towards her at a staff meeting; and 3) she wasn't told her job was in jeopardy at her 90 day review. Each of these arguments are meritlesss

As already discussed, plaintiff must show more than just temporal proximity to establish a *prima facie* case, and having failed to do this, she can't establish pretext on temporal proximity alone either. Furthermore, her speculations as to why Washington and Roberts were late to a staff meeting, or why Roberts walked through his employees' work area three times is too tenuous to establish pretext. Finally, the fact that she wasn't told her job was in jeopardy at her 90 day review is immaterial. Plaintiff was a temporary employee assigned to defendant who could be dismissed by either defendant or Kforce at will. She knew that having her lab notebook peer-reviewed in a timely fashion was instrumental to her job assignment. She conceded that she was told this at her review, that she was told to get it peer-reviewed, and she failed to do so. None of the evidence offered by plaintiff sufficiently demonstrates that Mallinckrodt's proffered reason for discharging Kingsberry is pretext. This Court "will not second guess an employer's decision to discharge an employee who refuses to perform the essential functions of the employee's job." Kasper v. Federated Mutual Ins. Co., 425 F.3d. 496, 504 (8th Cir. 2005) *citing* Hutson v. McDonnell Douglas Corp., 63 F.3d. 771, 781 (8th Cir. 1995)(holding that the federal courts do not sit as "super-personnel departments" that re-examine business decisions).

In light of the Court's findings, as a matter of law, defendant is entitled to summary judgment on all claims as contained in the plaintiff's amended complaint.

Dated this ___15th___ day of August, 2006.

_____
SENIOR UNITED STATES DISTRICT JUDGE